United States District Court
Middle District of Florida
Jacksonville Division

JENNIFER KERNON AND R.K.,

     *Plaintiffs, Counter-Defendants,*

V.                                **NO. 3:21-cv-312-MMH-PDB**

BANNER LIFE INSURANCE COMPANY,

     *Defendant, Counterclaimant.*

---

## Report & Recommendation

Before the Court is Banner Life Insurance Company's motion for interpleader relief, an injunction, attorney's fees, and costs. Doc. 60. Neither Jennifer Kernon nor R.K. (through a guardian ad litem) opposes the motion.

## Background

When Ms. Kernon and the late Randolph Kernon divorced on December 28, 2017, they agreed he would "maintain life insurance on the parties' respective lives for the face amount of $750,000 on [her] and $750,000 on [him], with [R.K.] as sole beneficiary on [his] insurance and [R.K.] as sole beneficiary on [hers] during the minority of [R.K.]." Doc. 6 at 7, 29. The agreement was ratified and made part of a final judgment of dissolution of marriage. Doc. 6 at 4–5.

Mr. Kernon died on September 27, 2020. Doc. 8 ¶ 21. At that time, he had life insurance on his behalf in two policies, including one through Banner

Life with a $500,000 death benefit naming both Ms. Kernon and R.K. as beneficiaries, with 60 percent for Ms. Kernon and 40 percent for R.K. Doc. 6 ¶¶ 6, 7; *see also* Doc. 6 at 22 (beneficiary designation form).

Banner Life failed to pay the death benefit, and, on February 15, 2021, Ms. Kernon and R.K. sued Banner Life in state court for breach of contract. Doc. 6 at 3.

Banner Life removed the case on March 18, 2021, answered the complaint, and brought a counterclaim for interpleader under Federal Rule of Civil Procedure 22. Docs. 1, 8. Banner Life contends the policy on Mr. Kernon's life and the agreement between Ms. Kernon and the late Mr. Kernon conflict, and Banner Life cannot "determine who is entitled to the [death benefit] without incurring the risk of being subject to costs and expenses in defending itself in multiple suits or the possibility of multiple payments for the amount due." Doc. 8 ¶ 30. Ms. Kernon and R.K. answered the counterclaim, admitting most allegations. Doc. 15.

At the parties' request, Doc. 32, the Court appointed Laurel Tesmer, Esquire, to serve as a guardian ad litem to represent R.K.'s interests in this litigation, Doc. 35. After meeting with Ms. Kernon and R.K. individually, Ms. Tesmer filed a "report and recommendation" recommending disbursement of the death benefit in accordance with the policy; specifically, that Ms. Kernon receive 60 percent and R.K. receive 40 percent. Doc. 43-1 at 11–12. Ms. Kernon and R.K. (through Ms. Tesmer) separately ask the Court to disburse the death benefit accordingly. *See* Doc. 58. That motion has not been referred to the undersigned and is pending.

How the breach-of-contract claim should be addressed was discussed at a December 2021 status conference and a February 2022 show-cause hearing. Doc. 48 at 20, 22; Rough Tr. 21–23.[1] At the status conference, Banner Life's counsel stated, "We can file a motion for summary judgment to relieve us of the breach of contract, and the order on that would include perhaps allowing us to interplead the funds, dismiss us from the case." Doc. 48 at 22. At the show-cause hearing, the Court emphasized the breach-of-contract claim must be addressed in some way, adding, "If it's a stipulation of dismissal or if it's … an agreement that if the Court grants the interpleader action that resolves the action between [Ms. Kernon and R.K. and Banner Life], that's fine."[2] Rough Tr. 22–23.

In the current unopposed motion, Banner Life asks the Court to (1) permit Banner Life to deposit into the Court's registry the $500,000 death benefit and any "applicable interest" minus $2,800 in attorney's fees and an unspecified amount of costs, (2) discharge Banner Life from liability, (3) dismiss Banner Life from this action, and (4) enjoin further action against Banner Life related to the death benefit. Doc. 60. Banner Life says nothing about the breach-of-contract claim.

---

[1] Neither side has ordered a transcript of the February show-cause hearing. The undersigned includes information about the hearing from a rough transcript. For information about ordering the transcript, contact the court reporter at the hearing, Katharine Healey, at (904) 549-1900.

[2] At the show-cause hearing, the Court discussed the conflict of interest Ms. Kernon and R.K.'s counsel might have in representing both of them. The Court suggested R.K.'s interest would be protected by Ms. Tesmer, obviating the need to pay another lawyer, and instructed the parties that any motion to accept Ms. Tesmer's recommendation would have to be by Ms. Kernon's counsel and Ms. Tesmer for R.K. Rough Tr. 15–17.

## Subject-Matter Jurisdiction

Banner Life removed this case from state court on the sole ground this Court has diversity jurisdiction. Doc. 1 ¶ 2.

A defendant may remove a case brought in state court to federal court based solely on diversity jurisdiction, 28 U.S.C. § 1441, unless the defendant is a citizen of the state where the case is brought, *id.* § 1441(b)(2); *Bregman v. Alderman*, 955 F.2d 660, 663 (11th Cir. 1992).

Diversity jurisdiction requires diverse citizenship of the opposing parties and more than $75,000 in controversy. 28 U.S.C. § 1332(a). For a natural person, citizenship is equivalent to domicile. *Mas v. Perry*, 489 F.2d 1396, 1399 (5th Cir. 1974). For a corporation, citizenship is where the corporation is incorporated and where it maintains its principal place of business. *Hertz Corp. v. Friend*, 559 U.S. 77, 81 (2010).

Here, removal was proper, and the Court has subject-matter jurisdiction. In Banner Life's notice of removal, Banner Life alleges Ms. Kernon and R.K. "are, and at the time of filing this action and all relevant times, citizens of the State of Florida," and "Banner Life is a corporation incorporated under the laws of the State of Maryland with its principal place of business in … Maryland." Doc. 1 ¶¶ 3, 4. In Banner Life's counterclaim, Banner Life alleges equivalent facts, Doc. 8 ¶¶ 15–17, and in their answer to the counterclaim, Ms. Kernon and R.K. admit those facts, Doc. 15 ¶¶ 1–3. Whether considering the breach-of-contract claim or the interpleader counterclaim, the

amount in controversy is at least $500,000—the amount of the death benefit at issue.[3] *See* Doc. 1 ¶ 5.

Thus, removal was proper, and this Court has subject-matter jurisdiction.

## Interpleader

Through its counterclaim, Doc. 8, and current motion, Doc. 60, Banner Life requests interpleader relief.

Interpleader is an equitable device that allows a stakeholder to bring an action joining two or more adverse claimants to a single fund. *In re Mandalay Shores Coop. Hous. Ass'n*, 21 F.3d 380, 383 (11th Cir. 1994). Interpleader protects a stakeholder from the possibility of defending multiple claims, *Fulton v. Kaiser Steel Corp.*, 397 F.2d 580, 582–83 (5th Cir. 1968), and is liberally applied to serve that purpose, *In re Bohart*, 743 F.2d 313, 325 (5th Cir. 1984); *Nat'l Fire Ins. Co. v. Sanders*, 38 F.2d 212, 214 (5th Cir. 1930).

Rule 22 is the federal procedural rule governing interpleader. The rule provides that "[p]ersons with claims that may expose a plaintiff to double or multiple liability may be joined as defendants and required to interplead." Fed.

---

[3]Rule 22—the rule under which Banner Life brings its counterclaim—provides no basis for jurisdiction. *See Perkins State Bank v. Connolly*, 632 F.2d 1306, 1310 n.3 (5th Cir. 1980) (explaining Rule 22 confers no subject-matter jurisdiction and may be invoked only if the Court has subject-matter jurisdiction).

The interpleader statute—28 U.S.C. § 1335—provides a basis for jurisdiction if the value of the disputed fund is $500 or more, two or more adverse claimants of diverse citizenship exist, and the plaintiff has deposited the fund amount into the registry of the court or provided a bond payable to the clerk of court. 28 U.S.C. § 1335. This Court has no jurisdiction under the interpleader statute because the claimants are non-diverse and Banner Life has made no deposit or bond. Banner Life does not contend otherwise.

R. Civ. P. 22(a)(1); *see Dunbar v. United States*, 502 F.2d 506, 511 (5th Cir. 1974) (explaining that a "prerequisite" for interpleader "is that the party requesting interpleader demonstrate that he has been or may be subjected to adverse claims"). The rule further provides that "[a] defendant exposed to similar liability may seek interpleader through a crossclaim or counterclaim." Fed. R. Civ. P. 22(a)(2).

"Ordinarily, … a claimant should file an answer in interpleader, setting out his claim to the *res* in contest." *Syms v. McRitchie*, 187 F.2d 915, 919 (5th Cir. 1951). From there, "[a]n interpleader action typically proceeds in two stages." *Klayman v. Jud. Watch, Inc.*, 650 F. App'x 741, 743 (11th Cir. 2016). In the first stage, the court determines whether interpleader is an appropriate mechanism for resolving the dispute and whether to discharge the stakeholder from further liability to the claimants. *Id*. Discharge is appropriate if the stakeholder is disinterested, i.e., the stakeholder "ha[s] no interest in the outcome of the dispute between the claimants." *Ohio Nat'l Life Assurance Corp. v. Langkau ex rel. Est. of Langkau*, 353 F. App'x 244, 249 (11th Cir. 2009). "A successful interpleader suit results in the entry of a discharge judgment on behalf of the stakeholder; once the stakeholder turns the asset over to the registry of the court, all legal obligations to the asset's claimants are satisfied." *Mandalay*, 21 F.3d at 383. In the second stage, the court evaluates rights to the interpleaded fund. *Klayman*, 650 F. App'x at 743.

Banner Life has established interpleader is an appropriate mechanism for resolving the dispute over the proper beneficiary or beneficiaries of the death benefit by showing the benefit became payable under the policy when Mr. Kernon died, Banner Life has no interest in who the beneficiary should be, and Banner Life confronts two potential claims for the death benefit

considering the agreement between Ms. Kernon and the late Mr. Kernon (requiring him to obtain a life insurance policy on his life designating R.K. as the sole beneficiary) and the policy on Mr. Kernon's life (designating both Ms. Kernon and R.K. as beneficiaries). After Banner Life deposits the death benefit and interest into the Court's registry, the Court may address Ms. Kernon's and R.K.'s (through Ms. Tesmer) pending request to disburse the death benefit in accordance with Ms. Tesmer's recommendation (i.e., in accordance with the policy; specifically, that Ms. Kernon receive 60 percent and R.K. receive 40 percent). Docs. 43-1, 58.

But the matter of the breach-of-contract claim remains: Banner Life fails to address the claim in the current motion; Banner Life never moved for summary judgment on the claim; the parties never jointly stipulated to dismissal of the claim; and the parties never expressly agreed that granting the current motion necessarily resolves the breach-of-contract claim (though an agreement may be inferred from the absence of opposition to Banner Life's request for discharge from liability and dismissal from the action). To ensure appropriate procedure, requiring the parties to file a joint stipulation of dismissal of the breach-of-contract claim before discharging Banner Life from liability and dismissing it from the action is warranted.

Thus, interpleader is appropriate, but a joint stipulation should be filed before providing the requested interpleader relief.

## Injunction

Banner Life asks the Court to enjoin any claimant to the death benefit from "instituting or maintaining any additional federal, state, or administrative action against Banner Life ... relating to [Mr. Kernon's] basic

life coverage under the Policy, the [death benefit], and/or the facts made the basis of this case[.]" Doc. 60 at 6, 8.

"An injunction is a drastic and extraordinary remedy" that "should not be granted as a matter of course." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010). For a permanent injunction, a movant ordinarily must establish (1) the movant has suffered an irreparable injury, (2) the remedies at law—such as monetary damages—are inadequate to compensate for the injury, (3) considering the balance of hardships between the plaintiff and the defendant, an injunction is warranted, and (4) the injunction will not disserve the public interest. *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).

Under the anti-injunction statute, a court "may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283.[4]

Although a court may grant injunctive relief in an interpleader action "to secure the full benefits of the adjudication and to terminate the litigation in a single suit, [the court is] not bound to do so and [its] adjudication of the

---

[4]When an action involves statutory interpleader under § 1335, injunctive relief is expressly available under 28 U.S.C. § 2361, which provides that in an action under § 1335, a district court may enter an order restraining the claimants "from instituting or prosecuting any proceeding in any State or United States court affecting the property, instrument or obligation involved in the interpleader action until further order of the court"; "shall hear and determine the case"; and "may discharge the plaintiff from further liability, make the injunction permanent, and make all appropriate orders to enforce its judgment." 28 U.S.C. § 2361. No equivalent statute applies to an action involving rule interpleader under Rule 22, leaving the court with the prohibition and limited exceptions in the anti-injunction statute, § 2283. *See* Charles A. Wright et al., *Federal Practice and Procedure* § 1717 (3d ed. 2022) (discussing injunctive relief for different types of interpleader actions).

conflicting claims is not any the less effective as res judicata because not supplemented by injunction." *Texas v. Florida*, 306 U.S. 398, 412 (1939).

Banner Life fails to explain why injunctive relief is necessary. Ms. Kernon and R.K. (through Ms. Tesmer) agree on how the death benefit should be disbursed, *see* Doc. 58, and Banner Life makes no assertion that other claimants exist or that other actions relating to the death benefit are pending or will be filed. Res judicata and collateral estoppel appear sufficient to protect Banner Life's interests. *See Metro. Life Ins. Co. v. Guy*, No. 2:20-CV-01308-LSC, 2021 WL 4864278, at *3 (N.D. Ala. Oct. 19, 2021) ("[T]he substance of the injunctive relief sought would seemingly be covered by the principle of res judicata."); *Metro. Life Ins. Co. v. Hill*, No. 6:11-cv-2043-CEH-TBS, 2012 WL 7802430, at *3 (M.D. Fla. Dec. 5, 2012) ("If the Court enters judgment in favor of Plaintiff, then its interests should be adequately protected by the doctrines of res judicata and collateral estoppel."), *report and recommendation adopted*, No. 6:11-cv-2043-CEH-TBS, 2013 WL 1212890 (M.D. Fla. Mar. 25, 2013); *Am. Gen. Life Ins. Co. v. Jones*, No. 08-0211-WS-B, 2008 WL 4949847, *2 n.4 (S.D. Ala. Nov. 13, 2008) ("To the extent that either claimant might attempt to sue American General in the future concerning these insurance proceeds, the judgment of this Court in this interpleader action would preclude them from doing so by operation of res judicata or collateral estoppel."); *Harris Corp. v. Dunn*, No. 6:05-cv-1388-JA-DAB, 2006 WL 2691541, at *4 (M.D. Fla. Aug. 25, 2006) ("As a practical matter, counterclaims or other actions against Harris are not maintainable with respect to the Fund, in view of the granting of an interpleader motion."), *report and recommendation adopted*, No. 6:05-cv-1388-JA-DAB, 2006 WL 2787853 (M.D. Fla. Sept. 19, 2006).

Thus, issuing an injunction is unwarranted.

9

## Attorney's Fees and Costs

Banner Life requests $2,800 in attorney's fees based on eight hours of work at an hourly rate of $350. Doc. 60 at 7. At times in the motion, Banner Life also requests "costs," including in the "wherefore" clause, but Banner Life does not describe the costs and omits a request for costs in the title of the motion, the title of the section requesting attorney's fees, and the concluding paragraph of that section. *See* Doc. 60 at 1, 7. Banner Life bases its request on federal cases applying, or observing that a court has, discretion to award attorney's fees and costs to a disinterested stakeholder in an interpleader action. Doc. 60 at 7.

"In an ordinary diversity case, awards of attorney's fees are governed by applicable state law." *Perkins State Bank v. Connolly*, 632 F.2d 1306, 1310 (5th Cir. 1980).[5] Under that rationale, Florida law controls here.[6] Regardless, attorney's fees and costs are unwarranted under either law.

---

[5]The former Fifth Circuit has observed that a statutory interpleader case under § 1335 is not an ordinary diversity case because the statute broadens jurisdiction and venue beyond that which would be possible in a diversity case under 28 U.S.C. § 1332. *Perkins*, 632 F.2d 1310. The court observed that § 1335 "may allow an interpleader action in the federal courts where no such action could have been brought in any state court, since that section allows for nationwide service of process regardless of the law of the state in which the district court sits," and "the federal interpleader action seeks to advance an interest which is not implicated in the typical diversity case: it protects a stakeholder who holds funds claimed by two or more adverse parties from multiple liability." *Id.* at 1310–11. The court continued, "A federal interpleader action may not, therefore, be treated in all respects as a typical diversity case; although substantive state rules of decision generally govern federal interpleader proceedings, the requirement is not absolute or automatic." *Id.* at 1311. The court held state laws that would deny an "uninterested stakeholder the recovery of attorney's fees interfere with the protective purpose of the interpleader statute and therefore do not bind federal courts." *Id.* The court continued, "But state [laws that] merely regulate the recovery of attorney's fees among adverse state law claimants do not hinder the operation of the federal interpleader statute and therefore should be applied as in any other diversity action." *Id.* Because that case addresses statutory interpleader, that law does not govern here.

[6]"There is considerable confusion whether a federal court is bound by state law

Both federal courts and Florida courts apply the "American Rule" under which each litigant pays its own attorney's fees absent a statute or contract authorizing recovery. *See Peter v. Nantkwest, Inc.*, 140 S. Ct. 365, 370 (2019); *Price v. Tyler*, 890 So. 2d 246, 250 (Fla. 2004).

Based on interpleader's equitable roots, both federal courts and Florida courts also recognize a court's inherent authority to award attorney's fees to a disinterested stakeholder in an interpleader action. *Prudential Ins. Co. of Am. v. Boyd*, 781 F.2d 1494, 1497 (11th Cir. 1986); *Hamilton v. Liberty Nat. Life Ins. Co.*, 207 So. 2d 472, 477 (Fla. 2d DCA 1968); *see also Hall v. Cole*, 412 U.S. 1, 4–5 (1973) ("Although the traditional American rule ordinarily disfavors the allowance of attorney's fees in the absence of statutory or contractual authorization, federal courts, in the exercise of their equitable powers, may award attorneys' fees when the interests of justice so require." (footnotes omitted)).

The Eleventh Circuit has observed, "In an interpleader action, costs and attorneys' fees are generally awarded, in the discretion of the court, to the plaintiff who initiates the interpleader as a mere disinterested stake holder." *Prudential*, 781 F.2d at 1497. "The award of costs and attorneys' fees in an interpleader action is generally to be imposed against the party who has benefited from the interpleader action." *Id.* "The usual practice is to tax the costs and fees against the interpleader fund, although the court may tax the

---

concerning the propriety of awarding the stakeholder attorney's fees out of the fund." Charles A. Wright et al., *Federal Practice and Procedure* § 1719 (3d ed. 2022) In most cases, "the question of state law is never mentioned by the court, which simply refers to its discretion or traditional equity practice; in others, the court concludes that the result would be the same under either law." *Id.* (citing cases). "On occasion, however, federal courts have concluded that state law governs the availability of attorney's fees under the doctrine of *Erie Railroad Company v. Tompkins.*" *Id.* (footnote omitted) (citing cases).

losing claimant directly when [the claimant's] conduct justifies doing so." *Id.* But "[i]n certain circumstances, … courts have determined that attorneys' fees are not warranted." *Mandalay*, 21 F.3d at 383. "One of those circumstances … is when a stakeholder's interpleader claim arises out of the normal course of business." *Id.* The normal-course-of-business standard "typically is applied to insurance companies[.]" *Id.* The court explained:

> The principle behind the normal-course-of-business standard is simple: an insurance company, for example, avails itself of interpleader to resolve disputed claims to insurance proceeds—disputes that arise with some modicum of regularity. In a sense, the insurance company will use interpleader as a tool to allocate proceeds and avoid further liability. As the costs of these occasional interpleader actions are foreseeable, the insurance company easily may allocate the costs of these suits to its customers. Unlike innocent stakeholders who unwittingly come into possession of a disputed asset, an insurance company can plan for interpleader as a regular cost of business and, therefore, is undeserving of a fee award.

*Id.*

Florida applies a similar rule under which a party seeking interpleader for its own protection is not entitled to attorney's fees. *Zuckerman v. Alter*, 758 So. 2d 1172, 1172 (Fla. 4th DCA 2000). Moreover, to obtain attorney's fees, a party must show it "sought an expeditious judicial determination of the conflicting claims." *Rafter v. Mia. Gables Realty, Inc.*, 428 So. 2d 351, 353 (Fla. 3d DCA 1983); *see also Drummond Title Co. v. Weinroth*, 77 So. 2d 606, 610 (Fla. 1955) ("We think that while the title company is subject to some criticism for waiting until it had been sued by the purchaser before filing its interpleader, it then acted in a manner of fairness to all parties concerned. Such delay, however, does affect its right to recover costs and attorneys' fees[.]"). Thus, for example, in *Ray v. Travelers Insurance Co.*, a Florida appellate court held a life insurance company was not entitled to an award of

12

attorney's fees where the company withheld a death benefit to the designated beneficiary after receiving a letter from an attorney claiming others may have rights under the policy and failed to bring an interpleader claim until after the designated beneficiary sued for the death benefit. 477 So. 2d 634, 635–38 (Fla. 5th DCA 1985).

Here, Banner Life is not entitled to attorney's fees under federal law because, at a minimum, it brought the interpleader claim in the ordinary course of business to resolve possibly disputed claims to the death benefit. Unlike an innocent stakeholder who unwittingly came into possession of the death benefit, Banner Life can "plan for interpleader as a regular cost of business and, therefore, is undeserving of a fee award." *See Mandalay*, 21 F.3d at 383 (quoted); *see also Metro. Life Ins. Co. v. Carter*, No. 3:04-cv-668-TJC-HTS, 2005 WL 2810699, at *11 (M.D. Fla. Oct. 27, 2005) (exercising discretion to deny insurance companies' request for attorney's fees in an interpleader action for two independent reasons, including because the circumstances involving possibly conflicting claims arose out of the normal course of business for the companies).

Banner Life neither acknowledges the normal-course-of-business standard nor attempts to show the circumstances go beyond Banner Life's normal course of business. *See U.S. Life Ins. Co. v. McIntosh*, No. 5:10-cv-684-MMH-MCR, 2011 WL 13323236, at *4 n.7 (M.D. Fla. Apr. 26, 2011) (explaining that if an insurance company believed its interpleader action presents an exception to the normal-course-of-business standard, the company "should present grounds for such a contention").

Banner Life is not entitled to attorney's fees under Florida law (and federal law to the extent equities are balanced under federal law) because, like

13

the life insurance company in *Ray*, it brought the interpleader counterclaim for its own protection in defending the breach-of-contract claim. *See Ray*, 477 So. 2d at 635–38; *see also Cogan v. United States*, 659 F. Supp. 353, 354 (S.D. Miss. 1987) ("Progressive Casualty's filing of its interpleader counterclaim may be more accurately characterized as having been motivated by its own self interest for, in so doing, it was able to extricate itself from the remaining parties' conflicting claims to the policy proceeds and further discharge itself from all liability with regard to the fund.").

Moreover, Banner Life fails to show it sought expeditious determination of the potentially conflicting claims. In fact, the record shows otherwise. Mr. Kernon died in September 2020. Doc. 8 ¶ 21. Ms. Kernon demanded the death benefit in October 2020. Doc. 6 at 25 (demand letter). Banner Life failed to disburse the death benefit, forcing Ms. Kernon and R.K. to sue in February 2021. Doc. 6. Banner Life brought its interpleader counterclaim in response to the lawsuit in March 2021. Doc. 8. Banner Life did not move for interpleader relief until a year later. Docs. 50 (motion filed in February 2022), 60 (amended motion filed in March 2022). Along the way, Banner Life caused numerous delays by failing to follow the Local Rules and respond to orders:

> March 29, 2021, order directing Banner Life to supplement its motion for leave to belatedly file its answer and counterclaim with information required by Local Rule 3.01(g), Doc. 9;
>
> April 5, 2021, order directing the clerk to redact R.K.'s name, date of birth, and social security number and other information subject to privacy protection from Banner Life's docket filings; directing counsel to Federal Rule of Civil Procedure 5.2 (privacy protection) and Local Rule 1.08(b) (typography); and informing counsel that filings not in compliance with the rules may be struck from the docket without further notice, Doc. 11;

May 6, 2021, order directing the parties to show cause why the case should not be dismissed or sanctions imposed for failure to file a case management report and reminding the parties that, under Local Rule 3.02(a)(2), they must use the uniform case-management-report form on the Court's website, Doc. 13;

May 26, 2021, order directing the parties to show cause why the case should not be dismissed or sanctions imposed for failure to file a case management report and respond to the May 6 order to show cause, Doc. 16;

June 11, 2021, order striking the case management report and the response to the order to show cause for including R.K.'s full name in violation Rule 5.02 (privacy protection) and for failure to use the uniform case management report form as required by Local Rule 3.02(a)(2), Doc. 20;

August 11, 2021, order directing Banner Life to show cause why sanctions should not be imposed for failure to comply with an order directing Banner Life to file a motion to appoint a guardian ad litem by July 30, 2021, Doc. 25;

September 8, 2021, order denying without prejudice Banner Life's motion to appoint a guardian ad litem for failure to comply with Local Rule 3.01(g), Doc. 29;

October 1, 2021, order directing the parties to show cause why the case should not be dismissed or sanctions imposed for failure to comply with the case management and scheduling order directing the parties to file disclosure statements required by Federal Rule of Civil Procedure 7.1 and Local Rule 3.03 by September 17, 2021, Doc. 33;

February 3, 2022, order directing the parties to show cause why sanctions should not be imposed for failing to file a status report by January 31, 2022, Doc. 44;

February 11, 2022, order scheduling a hearing on the February 3 order to show cause in part because Banner Life never responded to that order, Doc. 46; *see also* Rough Tr. 3, 19–20 (addressing Banner Life's failure to respond);

February 24, 2022, motion for relief from appearing in person by Banner Life with no Local Rule 3.01(g) certification, Doc. 52;

15

February 24, 2022, amended motion for relief from appearing in person by Banner Life with statement that Ms. Kernon and R.K.'s counsel has no objection but without a certification under the heading "Local Rule 3.01(g) Certification," as required by Local Rule 3.01(g)(2), Doc. 53; and

February 24, 2022, motion for interpleader relief by Banner Life that included no memorandum of law and no Local Rule 3.01(g) certification, Doc. 50; *see also* Doc. 57 (minutes of February show-cause hearing); Rough Tr. 11 (observing the motion is "bare-bones" and directing Banner Life or the parties to file a proper amended motion).

Responding to these delays and failures (as well as additional delays and failures attributable to only Ms. Kernon and R.K.'s counsel), the Court observed the action is very simple, the action should have been resolved long ago, and the "money should be in Ms. Kernon's and R.K.'s pockets instead of still sitting in Banner Life's bank account." Rough Tr. 17–18. The Court continued, "And it's only sitting there because the lawyers in this case haven't done what they're supposed to do." Rough Tr. 18.

Thus, denying Banner Life's request for fees and costs is warranted.[7]

---

[7]At the February 2022 show-cause hearing, the Court asked Banner Life's counsel to confirm Banner Life would not be requesting attorney's fees. Rough Tr. 14. Banner Life's counsel explained she would be discussing fees with Ms. Kernon and R.K.'s counsel. Rough Tr. 14. The Court stated it would review a request for fees and remove any fees incurred "simply because counsel didn't do what they were supposed to do the first time[.]" Rough Tr. 14. Banner Life's counsel stated Banner Life intended to request fees only "for the preparation of the counterclaim and the interpleader and … obviously the answer to the original complaint and the removal." Rough Tr. 14–15. The Court responded, "All right. I think -- those specific items are likely compensable and I have no issues with those." Rough Tr. 15. But the Court observed Ms. Kernon and R.K.'s position on fees was unknown and the parties should discuss them to reach an agreement, adding, "I do want the fees specified." Rough Tr. 15.

In the current motion, Banner Life fails to specify the work for which it is requesting fees, saying only, "In this case, Banner Life seeks an award of attorney's fees in the amount of $2,800.00, representing 8 hours of work at an hourly rate of $350/hour. The undersigned has been practicing law since 1988 and a rate of $350/hour is reasonable and appropriate for this action. Kernon and R.K. consent to the amount of this award." Doc. 60 at 7. Failure to specify fees as directed by the Court is another reason to deny the request.

16

## Recommendation

I recommend:

(1)     **granting in part and denying in part** Banner Life's motion for interpleader relief, Doc. 60;

(2)     **directing** Banner Life to deposit the death benefit ($500,000) and accrued interest into the Court's registry within five business days of an order on this report and recommendation;

(3)     **directing** the parties to file a joint stipulation of dismissal of the breach-of-contract claim if that is their intention (or otherwise address what should happen to that claim) within five business days of an order on this report and recommendation;

(4)     upon the deposit and any joint stipulation:

    (a)     **discharging** Banner Life from liability to Jennifer Kernon and R.K. relating to the death benefit under life insurance policy number 180201689, which, with interest, is the money deposited into the Court's registry;

    (b)     **dismissing** the breach-of-contract claim;

    (c)     **dismissing** Banner Life from this action with prejudice; and

    (d)     **continuing** interpleader as between Ms. Kernon and R.K. regarding their claims to the death benefit which, with interest, is the money that will be deposited into the Court's registry and **ruling** on the pending motion by Ms. Kernon and R.K. (through Ms. Tesmer) to disburse the death benefit in accordance with Ms. Tesmer's recommendation, Docs. 43, 58; and

(5)    **denying** Banner Life's request for an injunction, attorney's
fees, and costs.

**Deadlines for Objections and Responses to Objections**

"Within 14 days after being served with [a report and recommendation
on a dispositive motion], a party may serve and file specific written objections
to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A
party may respond to another party's objections within 14 days after being
served with a copy." *Id.* A party's failure to specifically object to the proposed
findings and recommendations alters the scope of review, including waiver of
the right to challenge anything to which no specific objection was made. 28
U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b)(3); 11th Cir. R. 3-1.

**Entered** in Jacksonville, Florida, on May 6, 2022.

PATRICIA D. BARKSDALE
*United States Magistrate Judge*

c:    Counsel of record

Laurel Tesmer
McCart & Tesmer, P.A.
10011 Water Works Lane
Riverview, FL 33578